FILED
SUPERIOR COURT
OF GUAM

2021 NOV 30 PM 4: 51

CLERK OF COURT
BY:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM, MICHAEL J.B. BORJA, in his capacity as Director of Land Management, | **Superior Court Case No. CV1198-18** |
| Plaintiff, | |
| and | **DECISION AND ORDER RE GOVERNMENT OF GUAM AND GUAM WATERWORKS AUTHORITY'S MOTIONS FOR SUMMARY JUDGMENT** |
| GUAM WATERWORKS AUTHORITY, a Guam Public Corporation, | |
| Plaintiff-Intervenor, | |
| vs. | |
| CORE TECH INTERNATIONAL CORPORATION, YOUNEX ENTERPRISES CORPORATION, | |
| Defendants. | |
| CORE TECH INTERNATIONAL CORPORATION, | |
| Counterclaim Plaintiff, | |
| vs. | |
| GOVERNMENT OF GUAM, MICHAEL J.B. BORJA, in his capacity as Director of Land Management, and GUAM WATERWORKS AUTHORITY, a Guam Public Corporation, | |
| Counterclaim Defendants. | |

Before the Court are separate Motions for Summary Judgment filed by Counterclaim Defendants Government of Guam and Michael J. B. Borja,[1] in his capacity as Director of the Department of Land Management (collectively, "the government"),[2] and Guam Waterworks Authority ("GWA"), against Counterclaim Plaintiff Core Tech International Corporation's ("Core Tech") counterclaims. Upon reviewing the pleadings, evidence, and relevant law, the Court GRANTS in part and DENIES in part Counterclaim Defendants' Motions.

## I.    **PROCEDURAL BACKGROUND**

On December 17, 2018, the government petitioned the Court to "amend, cancel and rescind all existing Certificates of Title that pertain to Lot 10184, Dededo, and its subdivisions[.]" Pet. Cancel and Amend Cert. Title (Dec. 17, 2018). On January 23, 2019, Core Tech answered and asserted its ownership of Lot 10184 and its various subdivisions. Answer (Jan. 23, 2019).

GWA later moved to intervene, which the Court granted. Mot. Intervene (Mar. 25, 2019); Order Granting Mot. Intervene (Mar. 28, 2019). GWA subsequently filed its Petition to Quiet Title on April 17, 2019. Pet. Quiet Title (Apr. 17, 2019). In its Petition, GWA asked the Court to enter an order: (1) declaring that "GWA is the owner of Lots 10193 and 10194 in fee simple absolute and that title thereto be quieted in GWA"; (2) declaring that defendants' interests in the lots are "void and of no force and effect", and (3) ordering Department of Land Management to

---

[1] Since February 2019, the Office of the Attorney General has substituted "Joseph M. Borja" in place of Michael J.B. Borja on pleadings and filings, however, no formal substitution has been submitted. The Court requests the Office of the Attorney General to address and clarify this issue.

[2] The Court refers to the plaintiff in this case, "Government of Guam, Michael J. B. Borja, in his capacity as Director of the Department of Land Management," as "the government." Specific references to the Department of Land Management are abbreviated as "DLM."

issue a Certificate of Title reflecting GWA's ownership of Lots 10193 and 10194.[3] *Id.* On May 24, 2019, Core Tech filed its Answer and Counterclaim to GWA's Petition, again asserting its ownership of Lot 10184 and its various subdivisions. Answer and Counterclaim to GWA's Pet. Quiet Title (May 24, 2019).

On January 8, 2020, the Court granted Core Tech's Motion for Leave to Amend. Order (Jan. 8, 2020). Core Tech then filed its Second Amended Answer; Counterclaims, in which it amended its answers to the government's Petition and asserted various counterclaims against the government and GWA. Second Am. Answer; Counterclaims (July 6, 2020). It also alleged six counterclaims (the subjects of the present motions):

| | |
|---|---|
| Count I: | Inverse Condemnation (Partial Taking - Lot 10184-7) |
| Count II: | Inverse Condemnation (Partial Taking - Lot 10184-6) |
| Count III: | Inverse Condemnation (Partial Taking - Sewer Lines & Utilities) |
| Count IV: | Public Law 23-23 |
| Count V: | Encroachment |
| Count VI: | Declaratory Relief |

*Id.* The government and GWA each filed replies to Core Tech's counterclaims.

On April 2, 2021, the government and GWA filed respective motions for summary judgment on Core Tech's counterclaims. Mot. Summ. J. (Apr. 2, 2021); Mem. P. & A. in Support of Mot. Summ. J. (Apr. 2, 2021). After opposition and reply briefing, the Court heard oral arguments on August 16, 2021, and took the motions under advisement.

---

[3] According to GWA's Petition, the property at issue--Lot 10184--lies within the confines of what it refers to as Lots 10193 and 10194. *See* Pet. Quiet Title ¶¶ 16-17; *see also id.* at Ex. E.

During the Court's review of the motions, the United States filed a Statement of Interest concerning the property at issue. U.S. Statement of Interest (Aug. 18, 2021). With leave of Court, Core Tech filed a Response to the U.S.'s Statement of Interest.

## II.    UNDISPUTED FACTS

1.  In "November 15, 1945, Congress ... enacted the Guam Land Transfer Act, Public Law 79-225, 59 Stat. 584, authorizing the Secretary of the Navy to transfer lands the military no longer needed to the Government of Guam." *United States v. Gov't of Guam*, No. CV 17-00113, 2018 WL 6729629, at *3 (D. Guam Dec. 21, 2018).

2.  On August 1, 1950, the United States Congress enacted the Organic Act of Guam, which directed the transfer of "title to all property, real and personal, owned by the United States and employed by the naval government of Guam in the administration of the civil affairs of the inhabitants of Guam ... to the Government of Guam within ninety days" after enactment. 48 U.S.C. § 1421f(a).

3.  The Organic Act also provided that any land "not reserved by the President of the United States within ninety days after" the enactment was to be transferred to the Government of Guam. 48 U.S.C. § 1421f(b).

4.  On October 30, 1950, President Harry S. Truman issued Executive Order 10178, which indicated that the Naval Government of Guam quitclaimed certain land to the United States, including the land at issue in this case. Civ. No 10-50 (Judgment on Declaration of Taking (Jul. 31, 1950)).

5.  A Judgment on Declaration of Taking covering the subject land was recorded with the government as Doc. No. 20991 on August 4, 1950. Decl. Clark, Ex. A (Apr. 2, 2021).

6. On May 23, 1980, the United States executed a Grant of Easement on the property, by which it granted the Government of Guam ("Gov. Guam") "an easement for the construction, installation, operation, maintenance, repair, and replacement of a sewage pumping station, force main, outfall, sewer lines and other general utility facilities." Decl. Clark, Ex. E (Grant of Easement, Inst. No. 312261 (May 23, 1980)).

7. On the same day, the United States also executed a General Purpose Lease, which granted Gov. Guam a license to use the property "for the construction, installation, maintenance, operation, repair and replacement of a Wastewater Treatment Plant and sewer lines...." Decl. Clark, Ex. F (General Purpose Lease, Inst. No. 312261 (May 23, 1980)). The term of the lease was twenty-five years, and Gov. Guam had the option to extend for an additional twenty-five years. *Id.*

8. On October 4, 1994, the United States enacted the Guam Excess Lands Act ("GELA"), which identified additional land to be returned to Gov. Guam. Pub. L. 103-339.

9. Under the terms of the GELA, the land transferred must be used for "public benefit use" and Gov. Guam must enact legislation which establishes a detailed plan for the public benefit use before transferring land. *Id.*

10. To effectuate the return of land identified in the GELA, Gov. Guam enacted Public Law 22-145. Public Law 22-145 provides that the identified land would be transferred to the Chamorro Land Trust Commission ("CLTC") and the CLTC would utilize the land for the benefit of all original landowners, their heirs, and others identified by Guam law.

11. Public Law 22-145 excluded "land that is presently utilized for direct public purposes such [as] schools, power substations, easements, roadways, and essential to the public's safety, welfare, health and protection...." *Id.* Public Law 22-145 also excluded from the

transfer those lands presently used for direct public purposes and essential to the public's safety, welfare, health and protection.

12. On January 2, 1997, Gov. Guam enacted Public Law 23-141, which included additional guidance on its land use plan. Under Public Law 23-141, the land identified would be returned "to the original landowners or their heirs, administrators, executors or other legal representatives of the landowners' original estates." Pub. L. 23-141:2.

13. Gov. Guam subsequently established the Guam Ancestral Lands Commission ("GALC") to effectuate the return of lands. *See* Pub. L. 25-45 (Jun. 9, 1999).

14. On July 23, 1997, Gov. Guam executed a Grant Deed which conveyed all of its property interest in all surface water and groundwater utility to GWA, including those interests in the easement and the license discussed *supra*. Decl. Clark, Ex. G (Grant Deed, Inst. No. 567559 (July 23, 1997)).

15. The Grant Deed cited Public Law 20-06:07, which provides that all surface waters and ground waters are public assets and that the first priority for utilization of any waters shall be for the use or resale of GWA. *Id.*

16. On July 26, 2002, the United States executed a Quitclaim Deed to the Government of Guam, which conveyed its right, title, and interest in 856.21 acres, more or less, of land located in the village of Dededo known as "Anderson Communications Annex No. 1 (AJKD)."

17. The July 26, 2002 Quitclaim Deed contained the following condition language:

GRANTOR conveys the Property to GRANTEE so long as GRANTEE uses the Property for public benefit use, as contemplated by the Guam Excess Lands Act, Public Law 103-339, 108 Stat. 3116 (1994). Should GRANTEE use the Property for other than such use, title to the Property shall revert to GRANTOR.

Decl. Clark, Ex. H (Quitclaim Deed, Inst. No. 660299 (Jul. 26, 2002)).

18. The July 26, 2002 Quitclaim Deed also conveyed the property subject to:

> **ALL** covenants, reservations, easements, leases, restrictions, and rights recorded or unrecorded, for public roads, highways, streets, railroads, power lines, telephone lines and equipment, pipelines, drainage, sewer and water maines and lines, public utilities and other rights of way, including but not limited to the specific easements, reservations, rights and covenants described herein, and to any facts which a physical inspection or accurate survey of the Property may disclose.

*Id.* (emphasis in original).

19. The July 26, 2002 Quitclaim Deed also conveyed the property subject to certain reservations. Specifically, it stated:

> GRANTOR reserves for itself, its successors and assigns, a perpetual non-exclusive easement over a portion of the property more particularly described in Map Drawing No. RE-95-02... attached hereto as Exhibit B as follows:
>
> (1)    Parcel G-3, an access road to the beach area at the Naval Communications Station, Finegayan, Guam, in favor of the U.S. Department of the Navy.
>
> (2)    Parcel A-2, a telephone line easement in favor of Government of Guam, Guam Telephone Authority ("GTA")...
>
> (3)    Parcel D-1, a power line and guy wire easement in favor of Government of Guam, Guam Power Authority ("GPA")...
>
> (4)    Parcel H, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
>
> (5)    Parcel I-1, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
>
> (6)    Parcel J, a 100-foot wide road easement to Building No. 50 in favor of Government of Guam, Department of Public Works ("DPW")...
>
> (7)    Parcel K, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
>
> (8)    Parcel L-4, a 20-foot wide water line easement in favor of Government of Guam, Guam Waterworks Authority ("GWA [sic]")....
>
> (9)    Parcel N, a telephone line easement in favor of Government of Guam, Guam Telephone Authority ("GTA")...

*Id.*

20. On August 29, 2002, Gov. Guam executed a Quitclaim Deed, which conveyed the

property to GALC. The Quitclaim Deed contained the following language:

> GRANTOR conveys subject property to GRANTEE so long as GRANTEE uses
> the Property for public benefit use, as prescribed by the Guam Excess Lands
> Act, Public Law 103-339, 108 Stat. 3116 (1994), Guam Public Laws 22-145,
> 23-23, 23-141, and 25-45 (Chapter 80 of Title 21 G.C.A.) consistent in all
> respects also with the terms and conditions of the Quitclaim Deeds issued by the
> United States of America all recorded at the Department of Land Management
> on July 26, 2002, as Document No. 660299.

Decl. Clark, Ex. J (Quitclaim Deed, Inst. No. 661951 (Aug. 29, 2002)).

21. Four years later, on October 26, 2006, the GALC executed a Quitclaim Deed, which

conveyed three lots of land to the Estate of ancestral landowner Jose Martinez Torres

("Torres Estate"), including Lot AL-002--a 252.23 acre lot, which contained Lot. No.

5039 and the unsurveyed portions of Estates 1540 and 2531. Decl. Clark, Ex. L

(Quitclaim Deed (Oct, 6, 2006) (Instr. No. 744340)).[4]

22. The Northern District Wastewater Treatment Plant is located on a portion of Lot AL-002.

23. The October 26, 2006 Quitclaim Deed contained the following language:

> TO HAVE AND TO HOLD, GRANTOR conveys subject property to
> GRANTEE(S) so long as GRANTEE(S)' [sic] use the property for public benefit
> use, as prescribed by the Guam Excess Lands Act, U.S. Public Law 103–339,
> 108 Stat. 3116 (1994), Guam Public Laws 22–145, 23–23, 23–141, 25–45
> (Chapter 80 of Title 21 G.C.A.), 25–178, 26–36 and 26–100.

*Id.*

24. On August 9, 2007 the Co-Administratrixes of the Estate of Jose Matinez Torres

petitioned the Court in Probate Case No. PR0220-50, for an order confirming the sale of

Lot AL-002 to Kil Yoo Yoon. *In the Matter of the Estate of Jose Martinez Torres,*

---

[4] Based on a comparison of Map Drawing No. RE-95-02 and the October 26, 2006 Quitclaim Deed, it appears that the easements listed in paragraph 19, *supra*, contained within Lot AL-002 are Parcels G-3, J, L-4, and N. *See* Decl. Clark, Ex. H (Quitclaim Deed, Inst. No. 660299 (Jul. 26, 2002)) *and* Decl. Clark, Ex. L (Quitclaim Deed (Oct. 6, 2006) (Instr. No. 744340)).

PR0220-50 (Pet. (Aug. 9, 2007)). The Court granted the Petition and issued an Order Confirming Sale of Real Property on August 31, 2007. PR0220-50 (Order (Aug. 31, 2007)).

25. The Torres Estate subsequently executed a Warranty Deed, which conveyed Lot AL-002 to Kil Yoo Yoon. Decl. Williams, Ex. 7 (Mar. 31, 2021) (Warranty Deed, Inst. No. 761426 (Sept. 13, 2007)).

26. Yoon recorded a subdivision survey map of Lot AL-002 with DLM. Decl. Clark, Ex. M. (Subdivision Survey Map, Land Management No. 109FY2008, Inst. No. 782273 (Nov. 18, 2008)).

27. The Subdivision Survey Map ("Castro Map") created Lot No. 10184 based on Lot AL-002 and subdivided Lot 10184 into Lot Nos. 10184-1 through 10184-8 and Lots 10184-17 and 10184-R17. *Id.*

28. The Castro Map indicates that Lot 10184-7 corresponded with the location of the sewer treatment plan and states "NOT RETURNED TO LANDOWNER." *Id.*

29. On January 26, 2010, Yoon conveyed Lot 10184, as subdivided by the Castro Map, to Younex Enterprises Corporation by Warranty Deed. Decl. Williams, Ex. 8 (Mar. 31, 2021) (Warranty Deed, Inst. No. 801378 (Jan. 26, 2010)).

30. The Warranty Deed references the Castro Map in its description of the subdivisions. *Id.*

31. On February 3, 2010, Younex granted a mortgage titled "First Mortgage on Real Property with Power of Private Sale" to Military Mutual Aid Association ("MMAA"). The mortgage secured a debt of $1,000,000 and encumbered the subdivisions of Lots 10184 and 5039 owned by Younex. Decl. Clark, Ex. P (Notice of Sale Under Mortgage, Inst. No. 877367 (Apr. 17, 2015)).

32. On February 22, 2010, DLM Deputy Civil Registrar, Andrew Santos, issued Certificates of Title for Lots 10184-1, 10184-3, 10184-4, 10184-5, 10184-6, 10184-8, 10184-17, and 10184-R17 stating that Younex is the owner in fee simple. Decl. Williams, Ex. 9.

33. On December 11, 2014, Deputy Civil Registrar Santos issued Certificates of Title for Lots 10184-2 and 10184-7 stating that Younex is the owner in fee simple. Decl. Williams, Ex. 10.

34. The Certificate of Title for Lot 10184-7 states "(Subject to Sewer Treatment Plant)" under the memorial of estates, assessments, liens, charges, or encumbrances on the Lot. *Id.*

35. On March 26, 2014, MMAA assigned the mortgage to STX Heavy Industries Co., Ltd. Decl. Williams, Ex. 11 (Mortgagee's Deed, Inst. No. 872575 (May 4, 2015)).

36. On December 11, 2014, Younex executed a Warranty Deed, by which it conveyed Lot 10184 (and its subdivisions) to HL Corporation, Inc. Decl. Clark, Ex. Q (Warranty Deed, Inst. No. 872575(Dec. 11, 2014)).

37. On December 31, 2014, STX Corp. assigned the mortgage to Ace Builders LLC. *Id.*

38. On April 16, 2015, Ace Builders LLC assigned the mortgage to Core Tech. Decl. Clark, Ex. T (Assignment of Mortgage and Loan Documents, Inst. No. 877277 (Apr. 16, 2015)).

39. On April 17, 2015, Core Tech filed a Notice of Sale Under Mortgage which stated that the Mortgagor (Younex) defaulted on its obligation to the Mortgagee (Core Tech) and the "Mortgage shall be foreclosed by Core Tech pursuant to the power of sale contained in the Mortgage by sale of the properties encumbered by such Mortgage to the highest bidder as public auction...." Decl. Clark, Ex. P (Notice of Sale Under Mortgage, Inst. No. 877367 (Apr. 17, 2015)).

40. A public foreclosure sale was held on May 4, 2015; Core Tech was the highest bidder, making a credit bid of $178,186,301.00. Decl. Williams, Ex. 11 (Mortgagee's Deed, Inst. No. 872575 (May 4, 2015)).

41. Also on May 4, 2015, Core Tech filed a Mortgagee's Deed, which stated "the Mortgagee... hereby TRANSFERS, SELLS, and, CONVEYS to ... [Core Tech], all right, title, and interests of ... [Younex] (the Mortgagor), and all the right, title, and interest of any party who has or may have an interest or claim in the Property...which is subject to the Mortgage." *Id.*

42. In March 2019, GWA began excavating a portion of Lot 10184 and removed Core Tech's fence that stood in between Lots 10184-6 and 10184-7. Decl. Bahan, ¶ 4 (May 3, 2021).

43. In April 2019, Core Tech discovered that GWA's "excavation and encroachment was on Lot 10184-6." *Id.* ¶ 5.

## III.  **LAW AND DISCUSSION**

### A. **Summary Judgment Standard**

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." GRCP 56(c). A genuine issue of fact exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7 (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). A material fact is "one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. . . . Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."

*Iizuka Corp.*, 1997 Guam 10 ¶ 7. "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." *Id.* ¶ 8 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). However, "the Court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7 (citing *Anderson*, 477 U.S. at 249).

## B. The Court Lacks Jurisdiction over Count IV (Public Law 23-23).

In Count IV of its counterclaims, Core Tech argues that Public Law 23-23, codified at 1 Guam Code Annotated Chapter 20, entitles it to compensation for Counterclaim Defendants' continued public use of the property. Enacted in 1995, Public Law 23-23 creates the Guam Land Repatriation Commission and memorializes the following policy:

> It is the policy of the government of Guam that land returned by the federal government to Guam be returned to the estates that held such property prior to the condemnations of said lands by the Federal Government. Exceptions to this policy shall be . . . [l]ands clearly under existing public use. In such circumstances, the government of Guam shall make good faith efforts to derive a means of compensation for continued public use of such lands.

1 GCA § 2004.

Core Tech contends this language establishes a cause of action for compensation. In its motion, the government presents several arguments proposing why Core Tech lacks standing to assert this counterclaim. While not explicitly argued by the government, however, the Court instead examines whether the Guam Legislature waived sovereign immunity for actions brought under Public Law 23-23.

"Through the Organic Act of Guam, 'Congress has provided a specific mechanism by

which sovereign immunity may be waived.'" *Bautista v. San Agustin*, 2015 Guam 23 ¶ 18

(citing *Sumitomo v. v. Gov't of Guam*, 2001 Guam 23 ¶ 8). Section 1421a of the Organic Act

provides:

> The government of Guam shall have the powers set forth in this chapter, shall
> have power to sue by such name, and, *with the consent of the legislature
> evidenced by enacted law, may be sued* upon any contract entered into with
> respect to, or any tort committed incident to, the exercise by the government of
> Guam of any of its lawful powers.

48 U.S.C.A. § 1421a (emphasis added). Thus, "[i]f sovereign immunity is applicable and would

otherwise act to deprive the courts of subject matter jurisdiction, only duly enacted legislation

can waive this immunity, and any waiver must be express." *Gange v. Gov't of Guam*, 2017

Guam 2 ¶ 15.

Upon review of Chapter 20 of Title 1 of the Guam Code Annotated, the Court finds no

language authorizing a claim against the government for violations thereof. Accordingly, the

Court finds that the doctrine of sovereign immunity deprives the Court of subject matter

jurisdiction over Core Tech's counterclaim seeking relief under Public Law 23-23. For that

reason, the Court GRANTS Counterclaim Defendants' Motion for Summary Judgment on Count

IV.[5]

## C. The Court has jurisdiction over Count IV (Declaratory Relief).

Citing 7 GCA § 26801, Core Tech seeks a declaratory judgment declaring that it owns

Lots 10184 and its subdivisions and Lot 5039 free from the uses of its Lots by Gov. Guam and

GWA. In its motion, the government contends that Core Tech was first required to exhaust all

---

[5] In opposition, Core Tech cites *Gutierrez v. Guam Power Auth.*, 2013 Guam 1, for the proposition that it is a proper plaintiff under Public Law 23-23. The Court disagrees. In *Gutierrez*, the Guam Supreme Court analyzed the policy stated in Public Law 23-23 as applied to a claim for inverse condemnation. 2013 Guam 1 ¶ 18 (applying Pub. L. 23-23 when determining whether the government held a valid license to use power poles and transmission lines). In other words, *Gutierrez* did not involve a claim brought pursuant to Public Law 23-23.

administrative remedies by filing a formal government claim.[6] It follows, according to the

government, that the Court does not have jurisdiction to hear Core Tech's counterclaim for

Declaratory Relief under the doctrine of sovereign immunity.

The government claims that *Barrett-Anderson v. Camacho,* 2015 Guam 20, required Core

Tech to file a claim under the Claims Act--and not under section 26801. In *Barrett-Anderson,*

the Office of the Attorney General filed a complaint seeking a declaratory judgment under 7

GCA § 26801, as to the validity of certain regulations governing the licensing and use of

electronic gaming devices. 2015 Guam 20 ¶ 1. The Guam Supreme Court held that "7 GCA §

26801 appears to provide the AG with an avenue to challenge the regulatory scheme without the

need to seek administrative remedies." However, Guam's Administrative Adjudication Law,

which provided for the exact relief sought by the AG, was the proper vehicle for the claim, rather

than "the more general action for declaratory relief ... [under] 7 GCA § 26801...." *Id.* ¶¶ 24-25.

In reaching its conclusion, the Guam Supreme Court looked to sections 9308 and 9309 of the

Administrative Adjudication Law, which specifically provide mechanisms for challenging the

validity of an agency rule "by petitioning the relevant agency ... [and] for challenging the

validity of an agency rule in the Superior Court, subject to the administrative exhaustion

requirement." *Id.* ¶ 25.

Similar to the Guam Supreme Court in *Barrett-Anderson,* the Court here finds that 7

GCA § 26801 provides Core Tech with an avenue for the relief it seeks. Under section 26801,

> Any person... who desires a declaration of his rights or duties... in respect to,
> in, or upon property... may, in cases of actual controversy relating to the legal
> rights and duties of the respective parties, bring an action in the court having
> jurisdiction for a declaration of his rights and duties in the premises....

---

[6] Although not cited by the government, the Court interprets "filing a formal government claim" as filing a claim
under the Government Claims Act ("Claims Act"), 5 GCA § 6101 *et seq.*

However, unlike in *Barrett-Anderson*, the Claims Act does not provide a more exacting mechanism for declaratory relief as to the validity or effect of Core Tech's property interest in the contested land. *See* 5 GCA § 6101 *et seq.* Accordingly, the Court finds that Core Tech has standing to bring its counterclaim for Declaratory Relief and the Court has jurisdiction to consider its claim as a general action for declaratory relief under 7 GCA § 26801.

The government also argues that Core Tech's failure to offer a deed, will, instrument, or contract for the Court to review, renders its counterclaim for declaratory relief improper under 7 GCA § 26801. The Court finds, however, that the language of section 26801 does not narrow the Court's review to petitions that seek a declaratory judgment as to a written instrument. Moreover, Core Tech has provided the Court with the May 4, 2014 Mortgagee's Deed, under which Younex conveyed its interest in Lot 10184 (and its subdivisions) to Core Tech.

For these reasons the Court DENIES Counterclaim Defendants' Motion for Summary Judgment on Count VI of Core Tech's counterclaims.

## D. Counts I, II, and III (Inverse Condemnation)

The final clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. This right has been extended to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(f) ("Private property shall not be taken for public use without just compensation."). "The Takings Clause is a limitation on governmental power, and is intended to prevent the government from forcing some people alone to bear public burdens, which in all fairness and justice, should be borne by the public as a whole." *Cepeda v. Gov't of Guam,* 2005 Guam 11 ¶ 20 (quoting *E. Enters. v. Apfel,* 524 U.S. 498, 522 (1998)). As its language indicates, the Takings Clause does not prohibit the taking of

private property, but instead prohibits taking without just compensation. *First English*

*Evangelical Lutheran Church of Glendale v. Cnty. of L.A., Cal.,* 482 U.S. 304, 314 (1987).

Where the government plans an acquisition and sues an owner to take his property, it

exercises its power of eminent domain. *Cepeda,* 2005 Guam 11 ¶ 21. By contrast, an inverse

condemnation proceeding is brought by a landowner whose property was taken for public

purposes without the institution of formal condemnation proceedings. *Id.*; *see also* 7 GCA §

11311.1 (allowing a landowner to institute an action for inverse condemnation "for the taking of

a person's fee or for lesser compensable interest in the property which has been expropriated by

the government of Guam without according the person due process."). In an inverse

condemnation action, the landowner has the burden of proving the taking and the amount of

compensation due. *See Troiano v. Colo. Dep't of Highways,* 463 P.2d 448, 451 (Colo. 1969)

("The property owner has the burden of proof with regard to establishing the existence of

damages and the amount of compensation therefor."); *Regency Outdoor Adver., Inc. v. City of*

*Los Angeles,* 139 P.3d 119, 133 (Cal. 2006) ("[T]he property owner must first clear the hurdle of

establishing that the public entity has, in fact, taken [or damaged] his or her property before he or

she can reach the issue of 'just compensation.'").

Counterclaim Defendants present various arguments for why summary judgment is

appropriate at this stage on Core Tech's inverse condemnation counterclaims. The Court

addresses each in turn.

### 1. Arguments Regarding Standing

As a threshold matter, Counterclaim Defendants challenge Core Tech's standing to bring

its claims for inverse condemnation. *See Guam Mem'l Hosp. Auth. v. Super. Ct.,* 2012 Guam 17 ¶ 8

("Standing is a 'threshold jurisdictional matter,' and as such, this issue can be raised 'at any stage of

the proceedings . . . ."). Specifically, Counterclaim Defendants argue that Core Tech does not possess an ownership interest in the property. *See Aetna Life & Cas. Co. v. City of Los Angeles*, 170 Cal. App. 3d 865, 875 (Ct. App. 1985) (explaining that standing to bring an action for recovery in inverse condemnation requires that the plaintiff have an interest in the property which has been taken by the state). They further argue that Core Tech filed its inverse condemnation counterclaims outside of the statute of limitations to bring a claim for inverse condemnation.

### a. Core Tech Holds an Ownership Interest vis a vis the Transfer to HL Corp. and the Mortgagee's Deed.

The Court first turns to Counterclaim Defendants' arguments regarding Core Tech's ownership interest in the property. GWA argues that Younex did not have any ownership interest in Lot 10184 when Core Tech foreclosed on the mortgage. On that basis, GWA contends that Core Tech did not acquire any property rights at the subsequent foreclosure sale. This argument, however, misses the mark.

The mortgage that Core Tech owned and held encumbered the property that Younex conveyed to HL Corp. and HL Corp. took the property subject to that encumbrance. *See Cornelison v. Kornbluth*, 542 P.2d 981, 986 (Cal. 1975) (en banc) ("Upon the transfer of real property covered by a mortgage ... the property remains subject to the secured indebtedness"). Younex remained obligated under the Mortgage and defaulted on its obligation. As a result, Core Tech judicially foreclosed on the property when it filed the Notice of Sale Under Mortgage. A foreclosure sale of the property was then held, pursuant to the power of sale in the Mortgage, to satisfy Younex's obligation to Core Tech. Core Tech obtained its interest in the property when it placed the winning bid at the foreclosure sale. *See Paulino v. Biscoe*, 2000 Guam 13 ¶ 19

(citing 18 GCA § 36113) ("Guam law recognizes the power of sale and provides that it may be conferred upon a mortgagee by a mortgagor that is exercised after a breach of the obligation for which the mortgage is security."). The Mortgagee's Deed memorializes Core Tech's property interest from the foreclosure sale.

Based on the power of sale in the Mortgage, the Notice of Sale Under Mortgage, and the Mortgagee's Deed, the Court finds that Core Tech holds an ownership interest in the property and has standing to bring its claim. Accordingly, the Court DENIES GWA's Motion for Summary Judgment on this basis.

### b. The Castro Map Does Not Create Any Property Interests for Counterclaim Defendants.

Counterclaim Defendants also argue that Core Tech does not own Lot 10184-7--the land that the Northern District Wastewater Treatment Plant sits on. Specifically, they contend that the October 6, 2006 Quitclaim Deed from the GALC to the Torres Estate (Inst. No. 744340) conveyed land subject to a survey establishing its size, boundaries and property lines. Counterclaim Defendants argue that the Castro Map, which indicates that Lot 10184-7 was not returned to the landowner, serves as that survey. It follows, according to Counterclaim Defendants, that the October 6, 2006 Quitclaim Deed never transferred title to Lot 10184-7 to Core Tech's predecessors.

Two factors mitigate against Counterclaim Defendants' interpretation of the language "subject to survey". First, the language that the Counterclaim Defendants point to does not create an interest in the property transferred. The provision in the October 6, 2006 Quitclaim Deed that Counterclaim Defendants contend incorporates the Castro Map reads as follows:

> WHEREAS, Grantor hereby does not warrant ingress or egress from or to said property with the exception of known dedicated public right of ways and public

easements if they so exist prior to the execution of this Deed. Grantor further does not warrant or establish the size, boundaries and property lines and Grantee(s) take said property in regards to size and boundaries subject to survey.

At best, the language indemnifies the grantor against a future claim involving the size and boundaries of the property conveyed. By its plain language, however, this provision fails to reserve any rights in the property in favor of the grantor. Moreover, even if the provision created a condition precedent to transfer, after GLAC transferred the rights to the Torres Estate, it lost the authority to enforce the condition. The Court therefore does not find that the provision requires, or even permits, that the Castro Map be incorporated into and have effect on the October 6, 2006 Quitclaim Deed.

Based on the foregoing, the Court DENIES Counterclaim Defendants' Motion for Summary Judgment on the basis that Core Tech lacks an ownership interest in the property. The Court next turns to Counterclaim Defendants' argument that Core Tech filed its inverse condemnation counterclaims outside of the statute of limitations

c. **Core Tech Has Not Violated the Statute of Limitations.**

Counterclaim Defendants also argue that the Court lacks jurisdiction to hear Counts I, II, and III on the grounds that Core Tech filed its inverse condemnation counterclaims outside of the statute of limitations prescribed by 7 GCA § 11311.1.

Section 11311.1 allows a landowner to institute an action to inversely condemn land when the Government of Guam has effected a taking, but has provided no compensation to the landowner. It states:

> Any person whose land was expropriated for public purposes by the government of Guam between August 1, 1950, and July 1, 1994, and who has not been compensated by the government of Guam for such taking may institute an action for inverse condemnation. In any taking by the government of Guam after July 1, 1994, in which the government fails to follow the eminent domain provisions

of Title 21, Guam Code Annotated, the person whose land is taken shall have four (4) years from the time of such taking to institute an action for inverse condemnation. An action shall lie for the taking of a person's fee or for lesser compensable interest in the property which has been expropriated by the government of Guam without according the person due process. In any action for inverse condemnation in which an award is made to a person for a taking, the court shall also award reasonable attorney's fees and costs.

7 GCA § 11311.1. Interpreting this statute, the Supreme Court of Guam has determined that "persons who were not the landowners at the time of the taking, or were not assigned the claims to compensation when they acquired the property, may file inverse condemnation claims." *Cepeda*, 2005 Guam 11 ¶ 18.

There are three areas on Lot 10184 upon which Core Tech alleges a taking has occurred: (1) since May 1980, Counterclaim Defendants' use and occupancy of Lot 10184-7, by allowing the Northern District Wastewater Treatment Plant to exist on said property; (2) since March 2019, Counterclaim Defendants' use and occupancy of a portion of Lot 10184-6, by expanding the footprint of the Northern District Wastewater Treatment Plant; and (3) since May 1980, Counterclaim Defendants' use and occupancy of a portion of Lots 10184 and 5039, by allowing sewer lines, utilities, and roads to traverse said property. Second Am. Counterclaims (July 6, 2020).

As to Counts I and III, the alleged taking by the Counterclaim Defendants occurred in 1980 when GWA's predecessor agency, Public Utility Agency of Guam, began operating the Northern District Wastewater Treatment Plant within the boundaries of Lot AL-002. Core Tech admittedly did not acquire the property until May 4, 2015, however, based upon the holding in *Cepeda*, and the amendment to 7 GCA § 11311.1, which removed the statute of limitations for takings which occurred prior to July 1, 1994, the Court finds that the Core Tech may properly pursue the first and third alleged taking for inverse condemnation.

As to Count II, Core Tech alleges that the taking began in March 2019 when Counterclaim Defendants began expanding the footprint of the Northern District Wastewater Treatment Plant onto Lot 10184-6. According to the Declaration of Conchita Bathan, Chief Executive Officer of Core Tech, in March 2019 GWA began excavating a portion of Lot 10184 and removed Core Tech's fence that stood in between Lots 10184-6 and 10184-7. Decl. Conchita Bahan ¶ 4. Bathan also stated that, in April 2019, Core Tech discovered that GWA's "excavation and encroachment was on Lot 10184-6." *Id.* ¶ 5.

Under section 11311.1, "any taking by the government of Guam after July 1, 1994, in which the government fails to follow the eminent domain provisions of Title 21, Guam Code Annotated, the person whose land is taken shall have four (4) years from the time of such taking to institute an action for inverse condemnation." Here, Core Tech discovered Counterclaim Defendants' expansion into Lot 10184-6 in March and April 2019 and first raised its claim for that taking in its January 10, 2020 Amended Counterclaims and Crossclaims. Since Core Tech brought its claim within four years of discovering the taking, the Court finds that its claim is timely and that it may properly pursue this claim for inverse condemnation pursuant to Guam's inverse condemnation laws.

Accordingly, the Court DENIES Counterclaim Defendants' Motion for Summary Judgment on counterclaims Counts I, II, and III on statute of limitations grounds.

### 2. Arguments Regarding Easements

Counterclaim Defendants next argue that no issue of material fact exists as to their right to use and occupy the property that Core Tech alleges constitutes a taking in counterclaim Counts I and III,[7] and consequently Core Tech's claims for inverse condemnation must fail. The

---

[7] The Court notes that Counterclaim Defendants did not present an argument as to counterclaim Count II--Core Tech's inverse condemnation claim for partial taking of Lot 10184-6.

Court must decide whether the evidence, viewed in the light most favorable to Core Tech, establishes that no issue of material fact exists as to Counterclaim Defendants' rights to: (1) use and occupy Lot 10184-7, by allowing the Northern District Wastewater Treatment Plant to exist on said property; and (2) use and occupy a portion of Lots 10184 and 5039, by allowing sewer lines, utilities, and roads to traverse said property.

Guam law provides that "[a]n estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." 21 GCA § 4101. Although a party may not obtain an estate in land without a written document evidencing such grant under Guam's statute of frauds, a party may be privileged to enter property by consent, license, or through the creation of an easement. Restatement (Second) of Torts §§ 892-892D, and 167-190; *see also N.L.R.B. v. Calkins*, 187 F.3d 1080, 1092-93 (9th Cir. 1999); and *Lal v. CBS, Inc.*, 726 F.2d 97, 101 (4th Cir. 1984). Accordingly, the Court reviews whether Counterclaim Defendants have a right to use the property in the manner that Core Tech alleges as a taking.

### a. Lot 10184-7 and the Northern District Wastewater Treatment Plant

The government argues that Counterclaim Defendants retain an easement for the use and occupancy of the Northern District Wastewater Treatment Plant. The government contends that the October 6, 2006 Quitclaim Deed conveyed the land subject to reservations stated in the July 26, 2002 Quitclaim Deed. Citing the 1980 Grant of Easement, the government asserts that the reservations include an easement for the usage of the sewage treatment plant. In a similar vein, Counterclaim Defendants also argue that the October 6, 2006 Quitclaim Deed conveyed the land subject to all existing public easements. Citing the Certificate of Title for Lot 10184-7, which

states "(Subject to Sewer Treatment Plant)" under the memorial of estates, assessments, liens,

charges, or encumbrances on the Lot, GWA argues that the parcel was not included in the

conveyance to the Torres Estate.

The October 6, 2006 Quitclaim Deed conveyed the property to the Torres Estate,

pursuant to Public Laws 22–141 and 22-145. Specifically, the quitclaim deed contains the

following relevant language:

> TO HAVE AND TO HOLD, GRANTOR conveys subject property to
> GRANTEE(S) so long as GRANTEE(S)' [sic] use the property for public benefit
> use, as prescribed by the Guam Excess Lands Act, U.S. Public Law 103–339,
> 108 Stat. 3116 (1994), Guam Public Laws 22–145, 23–23, 23–141, 25–45
> (Chapter 80 of Title 21 G.C.A.), 25–178, 26–36 and 26–100.

Quitclaim Deed (Oct, 6, 2006) (Instr. No. 744340). Section 8 of Public Law 22–145, entitled

"Lands exempted from this Act," states:

> Any land that is presently utilized for public easements such as roadways, water,
> power, sewer or underground telephone or communication lines or other such
> government utility use or infrastructure uses essential to the public's safety,
> welfare, health and protection is exempt from the provisions of this Act and
> shall not be released by the government of Guam to their former owners or
> heirs.

Guam Pub. L. 22–145:8 (Dec. 29, 1994) (emphases added). Public Law 23–141 contains a

similar provision. *See* Guam Pub. L. 23–141:7 (Jan. 2, 1997).

In *Gutierrez*, the Guam Supreme Court explained, "the prefatory words '[a]ny land that is

presently utilized for public easements' refers to existing public easements, and all of the words

following 'such as'—including 'or other such government utility use or infrastructure uses'—are

examples of land uses that further clarify 'public easements.'" 2013 Guam 1 ¶ 17 (citing Guam

Pub.L. 23–141:7). Moreover, in *Lizama v. Dep't of Pub. Works*, the Guam Supreme Court

provided the following guidance regarding easements:

> Easements by express grant are 'created by express words ... usually by deed....' An express grant of an easement 'may be created by an instrument clearly evincing such intent provided the instrument complies with the formalities necessary for the conveyance of an interest in land....' 'There must be language in the writing manifesting a clear intent to create a servitude....' The writing must contain 'plain and direct language evidencing the grantor's intent to create a right in the nature of an easement ...' The intent as gleaned from the face of the writing must be 'so manifest .... that no other construction can be placed on it.'

2005 Guam 12 ¶ 20.

Based on the Guam Supreme Court's guidance in *Gutierrez*, the Court first analyzes whether Counterclaim Defendants have established that a public easement for the use and occupancy of the Northern District Wastewater Treatment Plant existed prior to the October 6, 2006 conveyance. In making its determination, the Court relies on the Guam Supreme Court's instruction from *Lizama* regarding the creation of an easement. Should the Court find that Counterclaim Defendants have established the existence of an easement, the Court will then analyze whether Public Laws 22–141 and 22-145 affect the conveyance.

The government first points to the May 23, 1980 Grant of Easement, arguing that it created an easement for the use and occupancy of the Northern District Wastewater Treatment Plant. The May 23, 1980 Grant of Easement, however, pertains to the sewer treatment *lines*. Because the Grant of Easement does not contain "plain and direct language evidencing the grantor's intent to create a right" for use and occupancy of the Northern District Wastewater Treatment Plant, the Court does not find the government has established as a matter of law the existence of an easement. *See Lizama*, 2005 Guam 12 ¶ 20.

Next, GWA points to the language "(Subject to Sewer Treatment Plant)" contained in Certificate of Title for Lot 10184-7. The Court finds this fails to establish the existence of a public easement for two reasons. First, the Certificate of Title does not contain language that

references a specific easement. In other words, neither the party that retained the rights nor are the nature of the rights listed. Second, GWA does not provide evidence that the language does in fact reference an instrument that complies with the formalities necessary for the conveyance of an interest in land.

As Counterclaim Defendants point to no additional evidence of an easement, there is an issue of fact whether they have a right to use and occupy Lot 10184-7. Accordingly, the Court DENIES Counterclaim Defendants' Motion for Summary on Core Tech's Count I of its counterclaims.

### b. Lots 10184 and 5039 and the sewer lines, utilities, and roads

Turning to GWA's argument regarding counterclaim Count III, GWA argues that the May 23, 1980 Grant of Easement granted it a right to use and occupy the land where the utilities are located.

As an initial matter, the Court notes that Core Tech has provided no reference or evidence as to the location of the sewer lines, utilities, and roads for which it claims a taking has occurred. Moreover, it does not specify which utilities it is referring to. Nonetheless, the Court reviews whether GWA possesses an easement.

As previously stated, with the May 23, 1980 Grant of Easement, the United States granted Gov. Guam "an easement for the construction, installation, operation, maintenance, repair, and replacement of a sewage pumping station, force main, outfall, sewer lines and other general utility facilities." Decl. Clark, Ex. E (Grant of Easement, Inst. No. 312261 (May 23, 1980)). Gov. Guam subsequently executed a Grant Deed which conveyed all of its property interest in all surface water and groundwater utility to GWA; including those interests in the easement. Moreover, in the July 26, 2002 Quitclaim Deed, the United States reserved "Parcel

L-4, a 20-foot wide water line easement in favor of Government of Guam, Guam Waterworks Authority ("GWA [*sic*]")...."[8]  Based on this undisputed evidence, the Court finds that no issue of material fact exists as to GWA's water line easement on Parcel L-4, as of the July 26, 2002 Quitclaim Deed.  Furthermore, since the easement was created prior to the October 6, 2006 conveyance, the Court also finds that the land subject to GWA's water line easement qualified as land "presently utilized for public easements," under Public Laws 22–141 and 22-145.  *See Gutierrez,* 2013 Guam 1 ¶ 17.

Since, the October 6, 2006 Quitclaim Deed conveyed the property pursuant to Public Laws 22–141 and 22-145, the Court next turns to whether the Public Laws affected the October 6, 2006 conveyance.  As mentioned *supra,* both Public Laws include language stating that land that is presently utilized for public easements is exempt from the provisions of this Act and shall not be released by the government of Guam to their former owners or heirs.  Based on that language, the Court finds that the land subject to GWA's water line easement, Parcel L-4, was exempted from the October 6, 2006 Quitclaim Deed under Public Laws 22–141 and 22-145.  Since Parcel L-4 was exempted from the conveyance to the Torres Estate, it was also not included in any subsequent conveyance.  *See In re Marriage of Gioia,* 14 Cal. Rptr. 3d 362, 368 (Ct. App. 2004) ("A quitclaim deed only transfers whatever interest the grantor had in the described property at the time the conveyance was made.").

Based on the foregoing, the Court finds, as a matter of law, that GWA retains a property interest to use the land subject to the water line easement.[9]  Since establishing that a "taking" on

---

[8] As noted in *supra* note 4, Parcel L-4 is located within Lot AL-002 and, therefore, within the property at issue.

[9] The Court notes that case law is unclear as to whether the land encumbered by the easement is exempted from the transfer, therefore entitling Counterclaim Defendants title to the property, or if the easement is reserved.  In *Gutierrez* the Supreme Court of Guam indicated that land "presently utilized for public easements" would be exempted from a conveyance, pursuant to Public Laws 22-145 and 23-143.  2013 Guam 1 ¶ 17.  However, the

the property is required to proceed on a claim of inverse condemnation, the Court finds that

summary judgment is appropriate against Core Tech's counterclaim that Counterclaim

Defendants committed a partial taking of Lots 10184 and 5039 by allowing its sewer lines to

traverse said property. The Court notes that its finding is limited to the GWA's water line

easement, as described in the July 26, 2002 Quitclaim Deed.

Accordingly, the Court partially GRANTS Counterclaim Defendants' Motion for

Summary on Core Tech's Count III counterclaim. The Court DENIES summary judgment as to

the remaining claims in Count III.

### 3. GWA Has Not Established a Property License Right As A Matter of Law.

Finally, GWA argues that the May 23, 1980 General Purpose Lease establishes that it has

superior title to the Lot 10184-7. "Generally speaking, a license is personal, revocable,

unassignable, and impermanent." *Gutierrez*, 2013 Guam 1 ¶ 15. "Because a license does not

give the license holder an interest in the land, it does not pass with the title to the property and is

binding only between the parties to the license, expiring upon the death of either party or through

the conveyance of the burdened property. *Id.*

Here, on May 23, 1980, the United States granted a license to Gov. Guam to use the

property "for the construction, installation, maintenance, operation, repair and replacement of a

Wastewater Treatment Plant and sewer lines...." Decl. Clark, Ex. F (General Purpose Lease,

Inst. No. 312261 (May 23, 1980)). Gov. Guam later conveyed its interest in the license to GWA.

As previously stated, the United States executed a Quitclaim Deed on July 26, 2002, which

---

*Gutierrez* court found that the property right at issue, telephone line easement, was not land "presently utilized for public easements" prior to the government conveying the land to the original landowner. *Id.* at ¶ 16. Thus, the Court did not reach the issue before the Court of classifying the property right land "presently utilized for public easements" prior to a conveyance from the government to the original landowner. The Court reaches its conclusion that the land subject to GWA's water line easement is exempted from the conveyance to the Torres Estate based on the clear language of Public Laws 22-145 and 23-143.

conveyed its right, title, and interest in the subject property to Gov. Guam. Upon that conveyance, the license that the United States granted GWA was extinguished. Accordingly, the Court does not find that the May 23, 1980 General Purpose Lease establishes that GWA has superior title to Core Tech.

Since Counterclaim Defendants have not established that they have a right to use and occupy the Northern District Wastewater Treatment Plant on Lot 10184-7, the Court finds that an issue of material fact remains as to whether a taking has occurred. Accordingly, the Court DENIES Counterclaim Defendants' Motion for Summary on Core Tech's Count I counterclaim on these grounds.

### 4. The Government is Not a Proper Defendant for the Inverse Condemnation Counterclaims.

The government claims that Core Tech has no cognizable claim against it for its inverse condemnation and encroachment (Core Tech Counterclaims Counts I, II, III, V). Specifically, it asserts that Gov. Guam conveyed all of its property interest in the contested property to GWA via the July 23, 1997 Grant Deed (Inst. No. 567559). Accordingly, since the government no longer asserts a property interest in the contested property, it argues that it could not have committed a "taking."

The Court agrees. To succeed in its inverse condemnation and encroachment counterclaims, Core Tech will have to prove that Counterclaim Defendants committed a taking. Here, the record establishes that GWA is the sole party liable for all of Core Tech's alleged taking. Specifically, Counterclaim Defendants asserts that GWA--not the government--has operated the Northern District Wastewater Treatment Plant since at least 1997; that Gov. Guam conveyed its interest in all surface water and groundwater utilities to GWA; and that GWA's

expansion of the Northern District Wastewater Treatment Plant forms the basis of the Core

Tech's allegation that Counterclaim Defendants committed a partial taking of Lot 10184-6.

Based on these facts, the Court finds that Core Tech has not alleged any taking committed

by the government. For that reason, the Court GRANTS the government's Motion for Summary

Judgement on Core Tech's Counterclaims Counts I, II, III, and V against the government.

### 5. The Government Has Not Established Adverse Possession.

The government argues that, even if the Court finds that Core Tech holds superior title to

the contested property, the government obtained title in 2011 via adverse possession, pursuant to

7 GCA §§ 11209 and 11210. Under section 11209, a property is deemed to have been adversely

possessed when an occupant "entered into the possession of the property under claim of title,

exclusive of other right, founding such claim upon a written instrument... and that there has

been a continued occupation and possession of the property included in such instrument... for

five years." Section 11210 proscribes what constitutes adverse possession under section 11209.

Of relevance here are instances where the property has "been usually cultivated or improved" or

where the property "has been protected by a substantial enclosure." *See* 7 GCA §§ 11210(a) and

(b).

The government contends that the written instrument evidencing Gov. Guam's claim of

title is the 2002 Quitclaim Deed and the five-year period commenced in 2006 when GLAC

conveyed the property to the Torres Estate. Furthermore, it argues that the presence of the

Northern District Wastewater Treatment and the fencing surrounding it satisfy section 11210.

In opposition, Core Tech argues that the government has failed to establish that it has

actually possessed or occupied the property. Specifically, it contends that Gov. Guam conveyed

its rights to the Northern District Wastewater Treatment Plant to GWA with the July 23, 1997

Grant Deed. It follows, according to Core Tech, that the government's claim of adverse possession fails as a matter of law.

The Court agrees with Core Tech. It is undisputed that Gov. Guam conveyed all of its property interest in all surface water and groundwater utilities to GWA with the July 23, 1997 Grant Deed. As explained *supra* this included the land subject to the water line easement granted by the 1980 Grant of Easement. Furthermore, Counterclaim Defendants assert that GWA--not the government--has operated the Northern District Wastewater Treatment Plant since, at least, 1997. Moreover, by the government's own admission, it does not claim a property interest in the property. *See* Gov. Guam Mot. Summ. J. § V.

Based on these facts, the Court finds that the government has not established that it has occupied and possessed the property under a written instrument. Accordingly, the Court finds that its claim of adverse possession, pursuant to 7 GCA §§ 11209 and 11210 fails as a matter of law.

### E. The United States is Not a Necessary or Indispensable Party.

Counterclaim Defendants argue that the United States' reversionary interest in the contested property makes it a necessary and indispensable party to Core Tech's action under Guam Rule of Civil Procedure Rule 19(a). Moreover, they assert that the Court is legally prohibited from asserting personal or in rem jurisdiction over the United States or its property. Therefore, according to Counterclaim Defendants, the case should be dismissed under Guam Rule of Civil Procedure 12(b)(7).

Subsection (a) of Rule 19 establishes the standards for determining whether an absent party shall be joined, if feasible. An absentee is a necessary party for just adjudication when one of the following three circumstances exists:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the persons absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Benavente v. Taitano*, 2006 Guam 15 ¶ 58.

Pursuant to Rule 19(a), once an absentee is deemed a necessary party, the court shall order the joinder of such party "if feasible." *Id.* at ¶ 77. Where a court determines that an absentee is a necessary party, and that joinder of such party is not feasible under Rule 19(a), the court must then apply Rule 19(b) to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent persons thus being regarded as indispensable." *Id.* at ¶ 82. Subsection (b) of 19 delineates the four factors to be weighed in determining whether a necessary party is "indispensable," thus requiring dismissal. First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *Id.* at ¶ 84.

The government asserts that, if the Court determines that Core Tech owns the property on which the Northern District Wastewater Treatment Plant sits, the property would no longer be used for "public benefit use." The government argues that this act would invoke the United States' reversionary interest, creating a quiet title dispute between Core Tech and the United States. It follows, according to the government, that Core Tech cannot obtain complete relief

regarding ownership of the parcel in the United States' absence. The government further argues

that the disposition of the action in the United States absence may, as a practical matter, impair or

impede its ability to protect that interest; and Core Tech, Gov. Guam, and GWA substantially risk

incurring multiple and/or inconsistent obligations to the United States if the matter is litigated in

the United States' absence.

Gov Guam's arguments implicate Rule 19(a)(1) and (2). A finding that the government

established either subsection would satisfy Rule 19(a). Accordingly, the Court addresses each in

turn.

## 1. Rule 19(a)(1)

Under GRCP 19(a)(1), a party's presence is required when "complete relief cannot be

accorded among those already parties." GRCP 19(a)(1). Under the express terms of the rule, the

focus is on the relief between the parties to the present action, and not on the possibility of

further litigation between a party and the absentee. *Benavente*, 2006 Guam 15 ¶ 59 (citing

*Morgan Guar. Trust Co. v. Martin*, 466 F.2d 593, 598 (7th Cir. 1972)); *see also Gutierrez*, 2013

Guam 1 ¶ 68.

The government's argument relies on the Court considering the possibility of further

litigation between Core Tech and the United States, *i.e.*, a quiet title action. The Guam Supreme

Court, however, instructs that the Court's focus is on the relief between the parties to the present

action. Here, the Court finds that the relief that Core Tech seeks can be accorded among the

parties to the case. *See Gutierrez*, 2013 Guam 1 ¶ 70 (holding that the governor does not have

exclusive authority to award compensation in inverse condemnation cases). Accordingly, the

Court does not find that the United States is a necessary party under Rule 19(a)(1).

## 2. Rule 19(a)(2)(i)

Under Rule 19(a)(2)(i), an absentee's presence is required for just adjudication when the absentee "claims an interest relating to the subject of the action," and a disposition of the action, without the absentee, "may (i) as a practical matter impair or impede the person's ability to protect that interest." Thus, the Court's inquiry with respect to subsection (a)(2)(i) is twofold: first, what are the absentee's interests, if any; and second, as a practical matter, will a judgment impair or impede the absentee's ability to protect that interest. *See Benavente*, 2006 Guam 15 ¶ 74 ("The purpose of Rule 19(a)(2)(i) 'is to protect the legitimate interests of absent parties'").

As to the United States's interest, under the July 26, 2002 Quitclaim Deed the United States retained a reversionary interest in the property, which vested if the property is not used for "public benefit use," as contemplated by the Guam Excess Lands Act. Accordingly, the Court agrees with the government that the United States has an interest in the property. The court does not find, however, that a judgment in Core Tech's favor would impair or impede the United States' ability to protect its interest. If the United States believes that its reversionary interest has vested it has the ability to protect its interest by filing a civil action in the U.S. District Court under 28 U.S.C. § 2409a to quiet title. Accordingly, the Court does not find that the United States is a necessary party under Rule 19(a)(2)(i).

## 3. Rule 19(a)(2)(ii)

Finally, under Rule 19(a)(2)(ii) the court must assess whether a disposition of the action without the absentees may leave "any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest" of the absentee. Thus, the relevant inquiry under (a)(2)(ii) is whether joinder is

necessary to avoid harm to any of the persons already parties, that is, the government, GWA and Core Tech. *See Benavente*, 2006 Guam 15 ¶ 74.

Counterclaim Defendants and the United States argue that a judgment in Core Tech's favor would mean that the property where the Northern District Wastewater Treatment Plant is located would no longer be used for "public benefit use" and ownership of the property back to the United States. Furthermore, citing the Senate Committee on Energy and Natural Resources Report from the the United States Senate Report on H.R. 2144 (Guam Ancestral Lands Act), the United States also argues, albeit in a footnote, that the transfer of land to original landowners does not qualify as a "public benefit use" within the meaning of the Guam Excess Lands Act. *See* U.S. Statement of Interest, n.5.

The United States reversionary interest requires that the property be used for "public benefit use," as contemplated by the Guam Excess Lands Act. Under the Guam Excess Lands Act, the Government of Guam is required to enact legislation that establishes a detailed plan for the land's "public benefit use" as a precondition to transfer. Pub. L. 103-339:3(c). Moreover, under section 3, Gov. Guam's land use plan must be submitted and reviewed by various submitted and reviewed by various committees of the U.S. Congress.

Gov. Guam initially enacted Public Law 22-145 in satisfaction of these conditions. Under Public Law 22-145, returned land is to be transferred to the CLTC and the CLTC would utilize the land for the benefit of all original landowners, their heirs, and others identified by Guam law. In 1997, the Guam Legislature subsequently enacted Public Law 23-141, under which the land identified would be returned "to the original landowners or their heirs, administrators, executors or other legal representatives of the landowners' original estates." Pub.

L. 23-141:2. Under section 1 of Public Law 23-141, the Guam Legislature explained the "public

benefit use" as follows:

> [T]he Legislature has concluded that the government of Guam is neither the best
> nor most responsible guardian of lands. For surplus federal properties to best
> serve the community, they must be placed under progressive and responsible
> growth-oriented management. It is genuinely felt that it is the original
> landowners and their heirs who possess the drive, the know-how, the motivation
> and the capacity to develop these lands to their highest and best uses. It is the
> entrepreneurial spirit that will generate greater returns for the community as a
> whole, and not government or political brokerage.

Gov. Guam later established the GALC to effectuate the return of lands. *See* Pub. L. 25-45 (Jun.

9, 1999).

In 2002, when the United States conveyed the property to Gov. Guam, the Quitclaim

Deed indicated that the conditions of the Guam Excess Lands Act had been satisfied.

Specifically the Quitclaim Deed stated, in pertinent part,

> **WITNESSETH**, the conditions set forth in the Guam Excess Lands Act...
> having been met... the United States ... hereby remises, releases, and quitclaims
> unto the GRANTEE, and to its successors and assigns all of its rights, title, and
> interest in all of that certain real Property... described in Exhibit A, for public
> benefit use as contemplated by the Guam Excess Lands Act....

Turning to the parties' arguments, the Court does not find that the evidence supports the

United States' assertion that the policy of returning land back to original landowners does not

constitute a "public benefit use," as contemplated by the Guam Excess Lands Act.   First, while

the United States points to the United States Senate Report on Guam Ancestral Lands Act, which

states that it does not intend public benefit use to include returning land to original land owners,

the text of the Guam Ancestral Lands Act does not include language to that effect.   Second, the

Guam Legislature enacted Public Law 22-145 prior to the July 26, 2002, Quitclaim Deed, which

stated that Gov. Guam satisfied the requirements of the Guam Excess Lands Act.   Neither

Counterclaim Defendants nor the United States point the Court to any authority supporting the assertion that Public Law 22-145 does not satisfy the requirements of the Guam Ancestral Lands Act or that the July 26, 2002 Quitclaim Deed did not intend to convey the land pursuant to the public benefit use stated therein. Accordingly, the Court is satisfied that the transfer of property to the Torres Estate satisfied the "public benefit use" requirement, as stated by Public Law 23-141, thereby satisfying the requirement of Public Law 103-339.

The Court also disagrees that a finding that the land on which the Northern District Wastewater Treatment Plant is located was conveyed to the Torres Estate necessarily means that the United States reversionary interest would vest. This argument hinges on Core Tech removing the treatment plant from the property and depriving the public of its use. As pointed out by Core Tech, however, the land has always and continues to be used as a sewage treatment plant for the public's benefit. Response to U.S. Statement of Interest 14-15 (Sept. 15, 2021). Furthermore, Core Tech does not seek to remove the plant; rather it seeks compensation for the government's use of the land which it seeks. *Id.* Accordingly, the Court does not find that a judgement in favor of Core Tech would necessarily mean that the United States interest would vest.

Based on the foregoing, the Court does not find that the United States is a necessary party under Guam Rule of Civil Procedure 19. The Court therefore DENIES Counterclaim Defendants' Motion for Summary Judgment on Core Tech's counterclaims, pursuant to Rule 12(b)(7), for failing to add a necessary and indispensable party under Rule 19.

## IV.    CONCLUSION AND ORDER

In conclusion, as stated herein, the Court ORDERS the following:

The Court GRANTS the government's Motion for Summary Judgment as to Core Tech's counterclaims, Counts I, II, III, and V, on the grounds that the government no longer asserts a

property interest in the contested property.

The Court GRANTS GWA's Motion for Summary Judgment on counterclaim Count III, as to the sewer lines and DENIES summary judgment on the remaining claims in counterclaim Count III.

The Court DENIES GWA's Motion for Summary Judgment on Counts I, II, and V. The Court GRANTS Counterclaim Defendants' Motion for Summary Judgment on Core Tech's counterclaim, Count IV, on the grounds that the doctrine of sovereign immunity bars Core Tech from bringing an action under Public Law 23-23.

The Court DENIES Counterclaim Defendants' Motion for Summary Judgment on Core Tech's counterclaim, Count VI.

SO ORDERED this 30th day of November 2021.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

SERVICE
I acknowledge that an electronic
copy of the original was e-mailed to:
Atty. K. Clark, V. Leon Guerrero
V. Williams
Date: _____ Time: 11/30/21
**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Deputy Attorney General James L. Canto, II, Office of the Attorney General, for the Government of Guam and the Director of Land Management
Kelly Clark, Esq., Guam Waterworks Authority, and Vincent Leon Guerrero, Esq., Law Office of Vincent Leon Guerrero, for Guam Waterworks Authority
Vanessa L. Williams, Esq., Law Office of Vanessa L. Williams, for Core Tech International Corporation

Courtesy Service to Assistant U.S. Attorney Mikel W. Schwab for the United States of America